## Richmond.

### ROLLAND V. BATCHELDER.

#### MARCH 29th, 1888.

1. LIBEL—*Insulting words—Publication—Actionable.*—Words that according to
   their usual construction and common acceptation, are construed as
   insults, and tend to violence and breach of the peace, are actionable,
   whether written or spoken, and (it would seem) whether published or
   not. If publication be necessary, the writing and sending of such
   words to the person libelled, is sufficient. Code 1873, ch. 145, sec. 2.
   *Chaffin* v. *Lynch,* 83 Va., 106.

2. IDEM—*Letters to married women.*—Letter sent *per* servant to neighbor's wife
   artfully asserting that she had invited writer to meet her, and proposing
   private interview at a time and place specified, is within the meaning
   of the statute and actionable.

3. IDEM—*Demurrer to evidence.*—At a trial of action, (sec. 2, ch. 145, Code
   1873,) "no demurrer shall preclude a jury from passing on the alleged
   insulting words," and it is therefore improper for trial court to compel
   plaintiff to join in defendant's demurrer to the evidence.

Error to judgment of corporation court of city of Norfolk,
rendered February 5th, 1887, in an action of trespass on the
case wherein Thomas J. Rolland and Cora, his wife, (the
plaintiffs in error) are plaintiffs, and B. M. Batchelder, (the
defendant in error) is the defendant. Opinion states the case.

*Burroughs & Bro.,* and *W. L. Worthington,* for the plaintiffs in
error.

*Harmanson & Heath,* and *Edward Spalding,* for the defendant
in error.

We conclude from the petition of the plaintiffs in error for a writ of error that they have abandoned their common law counts and rely exclusively upon the counts for insulting words under the statute. They claim that for insulting words under the statute no publication is necessary, and they also claim that the letter in this case having been received by a married woman was necessarily a publication, because, they alledge, it was her legal duty to show the letter to her husband.

The law imposes no such duty upon the wife. If it did, its policy would be to create breaches of the peace or to encourage litigation. In *Parkins* v. *Scott*, 1 H. and C., p. 153, Wilde, B., in deciding this question, said: "The case has been put on the high moral duty of a wife to communicate to her husband any imputations upon her character; but in my opinion there is no obligation whatever on a wife to repeat to her husband whatever is said of her in his absence." But if counsel are right in supposing the wife to be under legal obligation to expose to her husband a letter received by her containing what she construes to be an insult, yet such a requirement cannot amount to publication in a suit for a civil injury. In such a suit it must appear that the libel was communicated to a stranger or to strangers by the defendant, for if the libel is contained in a letter addressed to the plaintiff, this is no evidence of a publication in a civil action. 4 Minor, p. 387. The letter in the case at bar was handed to Harriet (the colored woman) sealed, and by her handed to the female plaintiff sealed, and torn open by her and its contents made known by her. *There was no publication in the case;* and this brings us to consider the first branch of the proposition of counsel for plaintiffs in error, viz: that in an action for insulting words under the statute, the law does not require evidence of publication of the insulting words as a condition to maintaining the action.

In construing this statute prior to its amendment in 1850, this court, in *Moseley* v. *Moss*, 6 Gratt., pp. 544–5, uses this

language: "The supposition that the truth of the insulting words is inadmissible in mitigation of damages is derived from a misapprehension of the purpose and policy of that section of the statute which gives the action for defamation of character of that nature. It is not designed to operate as a penal enactment for the suppression of insults, because they lead to duelling. All the penal enactments of the statute are exhausted, in the direct suppression of duelling, and the civil action is given for reparation in pecuniary damages of the person aggrieved by an insult. The amout of the damages is, as in all other civil actions, to be measured by the prejudice sustained by the plaintiff, 'and they are awarded without regard to the penal correction of the defendant or the reformation of his manners.' Stark. on Sland., 162. The benefit to the community from the redress of civil injuries is merely incidental and consequential, and not the immediate purpose; when treated as public wrongs they are proceeded against by indictment or information. It would be a wild enterprise of legislatiou to attempt the suppression of duelling by civil actions for provocations, prosecuted upon principles of criminal justice."

This is not a penal statute intended for the suppression of insults, but one giving pecuniary damages in a civil suit to a person aggrieved by an insult, and the amount of the damages is, as in all other civil suits, to be measured by the prejudices sustained by the plaintiff.

What are we to conclude from this language? That an insult offered to a person not in the hearing or the presence of another is *ipso facto* actionable? If so, then the design of the statute would be to suppress insults. But we are told this is not its design, but its purpose is to give pecuniary damages for an insult, and the amount of the damages is determined by the extent of the injury caused by the insult. The object of the statute is to make good, in so far as it can, any loss which the plaintiff has sustained as a member of the community by the slanderous tongue or pen of the defendant.

You cannot apply the principles of criminal justice to civil suits brought for the recovery of pecuniary damages for loss of reputation as a member of a community occasioned by the slander of another. To attempt it "would be a wild enterprise of legislation." If this was true when *Moseley* v. *Moss* was decided, *a fortiori*, it must be true as the law now is. Then, "no plea, exception, or demurrer" was allowed to preclude a jury from passing upon the words. Now, "no demurrer shall preclude a jury from passing thereon." V. C. 1873, ch. 145, sec. 2.

Before the amendment of 1850 the truth of the words spoken or written could not be plead in bar of the action. Since the amendment, the truth of the words spoken or written can be plead in bar of the action. If the purpose of the statute was intended to operate as a penal enactment for the suppression of insults, as contended by the plaintiffs in error, then why allow the truth of the words to be given in evidence under the general issue in mitigation of damages, as was the defendant's right prior to the amendment, and in bar of the action as is now his right?

If the contention of the plaintiffs in error be sound, the legislature would never have been guilty of the absurdity of providing that the defendant in any action for defamation may justify by alleging and proving that the words spoken or written are true, for then, in the language of Judge Allen (in *Brooks* v. *Calloway*, 12th Leigh, p. 466), "the law which proffers redress for insult would furnish the opportunity of aggravating the outrage, and be itself an insulting mockery."

In the recent case of *Chaffin* v. *Lynch*, reported in 83 Va., 106, President Lewis, in delivering the opinion of this court, on page 121, in speaking of the change wrought by the amendment to the statute, says "that the same rules in respect to the defence by plea which apply to an action for defamation at common law, apply when the action is brought under the statute." Again, on the same page, he says: "The truth, doubt-

less, is that when the amendment was made, the legislature had arrived at the conclusion that, as a means of suppressing duelling, the statute, so far at least as the civil remedy given by it was concerned, was a failure, and therefore determined to permit any plea to be filed in an action under it which is admissible in an action for slander at common law. At all events, such is the effect of the amended statute."

The conclusion is irresistible, we submit, that the plaintiff, to maintain his action must prove publication. If we can judge of what the pleader's view of the law is, from his pleadings, we think we may safely argue that this is the view entertained by counsel for plaintiffs in error, or at least *was* the view at the time they prepared the declaration in this case. What the declaration claims is damages for the publication, in the presence of divers citizens of this commonwealth, of a "false, scandalous, defamatory, and malicious libel." Why did they aver a publication, if it is not necessary to prove a publication? Why assume a burthen which the law does not impose?

The allegations in each and every one of the counts, and which *constitute the gist of the action, is the publication* by the defendant of the defamatory and scandalous words of and concerning the plaintiff, Mrs. Rolland, and without proof of this publication, there is no proof of any damage sustained by her.

When the plaintiffs, in introducing their evidence, came to the point that they offered the letter containing the alleged defamatory and scandalous words to be read to the jury, it was objected to on the ground that the plaintiffs must first·show *prima facie* that it had been published as alleged, and they failing to show this, the court refused to let the letter go to the jury.

Before any evidence can be given of the contents of a libel, *prima facie* evidence must be given of a publication by the defendant. Stark. on Slander and Libel, Folkard edition, sec. 527; 4 Minor, 387.

This action is for the damages the plaintiff, Mrs. Rolland,

has sustained, because the defendant, by his publication of the letter, has scandalized her good name, &c., among her neighbors; but there is no evidence of such a publication by defendant to them. The facts are, she (the plaintiff) received from the defendant a sealed letter, and it is not alleged that this caused her any damage.

"If the words be spoken to the plaintiff only, without further publication, no action is maintainable."

"Where a libel was delivered to a third ·person to be conveyed to the plaintiff, and was so conveyed without having been read by any one, it was held no action could be supported." Stark. on Slander and Libel, secs. 527–8; *Sheffield* v. *Van Deuzin,* 13 Gray, Mass., 304; 2 Greenl. on Evidence, secs. 414; Townshend on Slander and Libel, sec. 95 and note to sec. 101.

The judge should non suit the plaintiff, or direct a verdict for the defendant, "if there is no evidence the plaintiff published the words." Odgers on Slander and Libel, p. 543, under the head of non suit.

The second error complained of is allowing the defendant to demur to the evidence.

The court in sustaining the demurrer to the evidence did not violate the statute, sec. 2, ch. 145, Code of Va., or invade the province of the jury according to the common-law practice of our courts, but simply said there is no evidence to sustain the action. "What is competent and admissible evidence, and whether there is any evidence or not, is exclusively a question for the court; the weight and effect of the evidence is a matter for the jury." Greenl. on Evidence, §§ 2 and 49.

Did the court do anything more than say this is an action for the damages you claim to have sustained by the publication of a letter, and there is no evidence of its publication, and there being no publication there is no damage?

Did the court do anything more than say your only claim for damages in this action is that the defendant published a certain letter, and you do not offer any evidence to show a

publication of the letter; there not being any evidence of publication you cannot recover?

Does the statute (Code of 1873, ch. 145, § 2), which says: "No demurrer shall preclude a jury from passing thereon," mean anything more than this? Words are used by one person about another, or in presence of others to him, which the latter deems insulting, and for which an action is brought. The words, whatever they may be (and whether the court considers them insulting or not), must go to the jury, who alone shall say whether or not they are insulting, and the damage sustained thereby.

If the statute changed the common-law practice of the courts governing the rules of evidence, its relevancy to the case under trial, and prohibited them from saying whether or not there is any relevant evidence to sustain the allegation, it should plainly so declare, which it has not done; it has only said, as a matter of pleading, the court shall not decide whether or not the words are insulting.

We claim that plaintiff must legally show that defendant's act caused her injury. This is the view by Judge Baldwin in *Moseley* v. *Moss*, 6 Gratt., 540, where construing this statute, he says: "It was obviously contemplated by the legislature · that the jury should determine, in the first place, whether the words are insulting or not; and in the next place, if insulting, *what damage to the plaintiff was occasioned thereby.*" And on page 542 he further says: " In deciding for the plaintiff the jury must assess the damage he is to recover, and in so doing they have of necessity to look not only to the nature, degree, and tendency of the insult, but also to circumstances of aggravations on the one hand and of mitigations on the other."

For what purpose were they to look to those circumstances? To see the injury the plaintiff had received, and to show that it is only for damages sustained, and not as a penal enactment for reformation of a person's morals and manners.

LACY, J., delivered the opinion of the court.

This was an action of trespass on the case for insulting words under the statute. The defendant in error, on the 5th day of February, 1887, sent by his servant the following letter to the wife of his neighbor, living on the lot adjoining his own, in the city of Norfolk:

"NORFOLK, SAT., February 5, 1887.

"MISS CORA:

"Yours received. Will meet you at post-office at 5 o'clock this P. M. for a short interview. If you are not there, then I will meet you at the corner of Brewer and Free-mason street at half-past eight o'clock this P. M. If that is not convenient for you, I will be at my office to-morrow (Sunday) morning from 10 o'clock to 11. Either of the above places you can come with safety.

"Yours,

"B. M. BATCHELDER.

"P. S. You have the advantage of me; I won't know you, so you must make yourself known.

"B."

He directed his servant to deliver this note to the servant of Mr. Rolland, who lived on the adjoining lot, and direct that it be given to Miss Cora, meaning Mrs. Cora Rolland, the wife of T. J. Rolland. Mrs. Rolland became indignant, and sent a message back threatening the sender of the note with her husband. Batchelder was arrested, and admitted sending the note, but sought to exculpate himself by the assertion that the note was not meant for Mrs. Rolland. The arrest, however, had been effected by Mrs. Rolland's going to the appointed place, shadowed at her request by an officer, who arrested Batchelder in the act of making advances to her. The suit was instituted for $10,000 damages; when the testimony had been offered on the part of the plaintiff, the defendant offered none, but demurred to the evidence. At the trial, the court

excluded the letter set forth above, as evidence from the jury, because there was no sufficient publication of the same found, it not having been otherwise published than by sending it to the person to whom it was addressed. The court discharged the jury without allowing them to assess the damages in the case, subject to the judgment of the court upon the demurrer to the evidence. The court then rendered its judgment upon the demurrer to the evidence in favor of the defendant, whereupon the case was brought to this court by writ of error.

The action is brought under the second section of chapter 145 of the Code of 1873, which provides that "all words which from their usual construction, and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." Such words are actionable whether they be spoken words or written words. *Chaffin* v. *Lynch*, 83 Va., 106. That the words used are insulting words cannot be questioned; that they tend to violence and breach of the peace is equally clear. But it is argued that this letter is not a libel, because it was not published by the defendant, and it was so held by the corporation court. If publication was necessary to constitute insulting words actionable, it is established in this case that the letter was written by the defendant, and given into the hands of one person, Nancy, the servant, with money and directions to deliver it to Harriet, another person, and the servant of the plaintiff, with directions to deliver it to the wife of the plaintiff, T. J. Rolland. The defendant thus parted with the letter, sent it forth, and the result of this carefully prepared train is that the contents became known. This might possibly be held to be a sufficient publication if such were required to render the words actionable. In the case of *Miller* v. *Butler*, 6 Cush., 71, a similar letter was sent through the mail, and this was held sufficient publication, although directed to and received by the person addressed. And Judge Tucker says, in his admirable work on the Laws of Virginia,

that writing a libelous letter to the person libelled is a publication, and is actionable. Tuck. Bl. Comm., bk. 3, p. 63. And while this is doubtless true, in the case of the *State* v. *Avery*, 7 Conn., 266, it is held punishable as an offense of a public nature, because it tends to create ill blood, and cause a disturbance of the public peace. But we do not think any publication is necessary under our statute cited above; that the words, according to their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, is sufficient to render them actionable. If they are so written or spoken as to tend to violence and breach of the peace, that is all the statute requires. If a libel is published, or a slander communicated to some third person, the action accrues. But whatever may have been the original object of the statute, about which we find some of the judges not entirely agreed, the intention of the law expressed therein is clearly to render all words which, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, actionable. Insulting words written to the person insulted, tend to violence and breach of the peace, whether exhibited to a third person or not, and such words, spoken to another without the presence of third persons, tend also to violence and breach of the peace. Now, here is a letter written to the wife of a neighbor, one living upon an adjoining lot, artfully asserting that in response to an invitation contained in a letter from her (which is entirely false, no letter having been written by her) the writer is ready and proposes to meet her on the street corner after dark, or at a private interview in his place of business on the Sabbath day. This was an insulting proposal to a married woman, and, being written to a woman of unimpeached honor and virtue, it was a letter to her husband as well, as the first impulse of every such married woman would be, as was the first impulse of this married woman, to send her husband and lawful protector to punish the would-be seducer who had cast his lewd eyes

upon her across their dividing fence. If the intimation to the married woman that she had opened this correspondence, the object of which was to accomplish and conceal an adulterous intercourse with the writer, was other than such words as the statute contemplates, then the statute is a vain thing. Such words are insulting, and certainly tend to violence and breach of the peace, within the meaning the statute. To render insulting words actionable, they need not be spoken in the presence of a third person, and, to render written words which are insulting actionable, it is not necessary that they should be published to the world. If they are such, and are so used as to tend to violence and breach of the peace, they are by the law made actionable, and such action must be tried by a jury, and must be heard upon its merits, for "no demurrer shall preclude a jury from passing thereon."

Such being our view of the law, it follows that we think the corporation court erred in excluding the insulting letter from the jury, and erred in compelling the plaintiff to join in the demurrer to the evidence, offered by the defendant, and erred in discharging the jury without allowing them to render a verdict in the cause. But as there has been no assessment of damages in the cause, this court cannot now render such judgment as the said corporation court should have rendered, but the judgment of that court will be reversed and annulled, and the cause will be remanded to the said corporation court for a new trial, to be had therein in accordance with the foregoing views.

JUDGMENT REVERSED.