# Richmond.

## W. T. Grant Company v. Frances L. Owens.

March 2, 1928.

1. Corporations—*Liability for Torts of Agents—Compensatory and Puni-tive Damages.*—Corporations in cases of wrongs to the person, as distinguished from personal injuries arising from an agent's negli-gence, are responsible for such wrongs committed by an agent, if the wrong was done while the agent was engaged in the ordinary course of his employment and grew out of an act connected with the employment. In such a case the person who has suffered injury may recover compensatory damages from the corporation as prin-cipal; and may recover punitive damages if the principal had auth-orized the tort, or has subsequently ratified it.

2. Libel and Slander—*Insulting Words—Character of Action.*—An action for insulting words under section 5781 of the Code of 1919 has been treated since the amendment of the original statute in 1849 entirely as an action for libel or slander, for words actionable *per se,* with two exceptions; "no demurrer shall preclude a jury passing thereon," and no publication of the words is necessary. In all other respects an action under the statute is placed on all fours with an action for defamation at common law. In fact, from the standpoint of the Virginia law, the action for insulting words is an action for libel or slander.

3. Libel and Slander—*Action for Insulting Words—Construction of Stat-ute—Original Object of Statute.*—Since the amendment of the original statute in 1849, in dealing with the statute against insulting words (section 5781 of the Code of 1919), no weight or importance has been attached to the purpose for which it was originally enacted. The original object of the statute, in the matter of preventing dueling, is no longer entitled to consideration in considering the statute.

4. Libel and Slander—*Insulting Words—Effect of Statute (Section 5781 of the Code of 1919).*—The effect of the statute against insulting words (section 5781 of the Code of 1919) is simply to make a class of words actionable *per se* which were not so at common law.

5. Libel and Slander—*Statute Against Insulting Words—Liability of Cor-poration Under Statute.*—A corporation, as any other master, is liable in damages under the statute (section 5781 of the Code of 1919) for insulting words uttered by its agent while engaged in the ordinary course of his employment, and in connection therewith.

6. FALSE IMPRISONMENT—*Detention of Saleswoman Charged with Theft from Store—Whether Detention Constituted False Imprisonment—Case at Bar.*—In the instant case plaintiff, a saleswoman in defendant's store, was taken into the office of the general manager of the store and charged with altering a sales ticket with the intention of stealing fifty cents. She was held in the office until after the store was closed and the other clerks had left, and threatened with the police and jail until she signed a letter admitting her intention to steal the fifty cents. Plaintiff was told that if she left before signing the letter she would be taken to jail. Acting under the force of these threats plaintiff finally signed the letter.

   *Held:* That the jury were justified in finding a verdict for plaintiff in an action for false imprisonment.

7. FALSE IMPRISONMENT—*Definition.*—False imprisonment is defined as the direct restraint by one person of the physical liberty of another without adequate legal justification.

8. FALSE IMPRISONMENT—*Restraint—Restraint by Threats.*—The essential thing in false imprisonment is restraint of the person. This may be caused by threats as well as by actual force; and the threats may be by conduct or by words.

9. FALSE IMPRISONMENT—*Saleswoman Charged with Theft—Detention and Examination of Plaintiff as to Alleged Theft—Case at Bar.*—In the instant case plaintiff, a saleswoman in defendant's store, was accused of altering a sales ticket with the intention of stealing fifty cents. While defendant's employees would have been justified in detaining plaintiff for a reasonable time, in a reasonable way, for the purpose of having her explain the circumstances, they were not justified in detaining her with bullying tactics and threats in attempting to prove her guilt, or to make her confess that she intended to take the fifty cents in question. Such restraint was unlawful, and constituted a false imprisonment in law, though physical force was absent.

10. FALSE IMPRISONMENT—*Master and Servant—Agent of Independent Contractor—Case at Bar.*—In the instant case, an action for false imprisonment, defendant contended that the detention of plaintiff was by an employee of an independent contractor, a service system employed to send out "field crews" to investigate the clerks employed in defendant's stores in different cities, and not by its own employee. But the uncontradicted evidence showed that the general manager of defendant's store turned plaintiff over to the employee in question for the purpose of having him investigate the alleged irregularity and in order that the general manager might act upon the result of the investigation as he saw fit. The detention and examination took place in the general manager's private office and the letter confessing the alleged crime, which plaintiff was forced to sign,

was witnessed by the general manager, who then discharged plaintiff.

*Held:* That defendant was liable for the torts of the employee in the course of and in connection with the investigation. The employee of the service system with respect to this transaction was a special agent of the defendant, even though employed by an independent contractor and under the doctrine of *respondeat superior* defendant was liable.

11. FALSE IMPRISONMENT—*Insulting Words—Action for False Imprisonment and Insulting Words—Excessive Damages—Verdict for $900.*—In the instant case, an action for insulting words and for false imprisonment, plaintiff was a clerk in defendant's store and was detained by defendant's employees and charged with an intent to steal fifty cents of defendant's. There was a verdict and judgment for plaintiff for $900. Defendant assigned as error that the damages were excessive. Plaintiff did not ask for punitive damages, and the jury were correctly instructed on that subject at the request of the defendant. The amount awarded constituted the combined damages allowed for both of the alleged torts.

*Held:* That there was nothing in the size of the verdict to indicate that it was intended to be punitive in character.

12. FALSE IMPRISONMENT—*Insulting Words—Presumption of Damages.*— The law presumes that damages result from the utterance of insulting words, made actionable by statute (section 5781 of the Code of 1919), just as it does when the words uttered are actionable *per se.* It is not necessary in either case, in order to recover, to prove actual or pecuniary loss.

13. FALSE IMPRISONMENT—*Damages—Mental Pain and Suffering.*—In an action for false imprisonment, mental pain and suffering, and the indignity and humiliation inflicted upon the plaintiff constitute just basis for compensatory damages.

14. DEMURRER TO THE EVIDENCE—*Preponderance of Evidence—Credibility of Witnesses.*—On a demurrer to the evidence, the appellate court has nothing to do with the preponderance of the evidence, or the credibility of the witnesses.

15. APPEAL AND ERROR—*Evidence Sufficient to Support Verdict—Weight of Verdict of Jury—Case at Bar.*—In the instant case, an action for false imprisonment, counsel for defendant insisted that a verdict for plaintiff should be set aside because without sufficient evidence to support it. If plaintiff's evidence was believed there was sufficient evidence to support the verdict. The jury heard her evidence and believed what she said.

*Held:* That as her evidence was not incredible, the appellate court could not invade the special province of the jury.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*T. S. Halstead*, for the plaintiff in error.

*N. T. Green*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is a suit brought by Mrs. Frances L. Owens against W. T. Grant Company, a corporation, to recover damages for tort. The declaration embraces two causes of action, alleged in separate counts. The first count is an action for insulting words under section 5781 of the Code, and the second constitutes an action for false imprisonment. The defendant in the court below filed a demurrer in writing and two special pleas, but the court overruled the demurrer, and, upon the trial of the case on the merits, the jury found a verdict for the plaintiff "on both counts" and assessed the damages at $900.00. Judgment was entered according to the verdict, and thereupon W. T. Grant Company obtained this writ of error.

The parties will hereinafter be designated by name, or in accordance with their relative positions in the trial court.

The only ground of demurrer relied on in this court relates to the first count in the declaration, it being broadly contended that the statutory action does not lie against a corporation for insulting words uttered by its agent. The argument advanced in support of

this proposition is based principally upon the grounds, (1) that the purpose of the statute (now 5781 of the Code), as originally enacted in 1810, was to discountenance and suppress duelling and other breaches of the peace, and to create "a peculiarly personal cause of action," to which an artificial being such as a corporation, is not susceptible; and, (2) being confined to such insults as may lead to violence and a breach of the peace, liability for its violation should be confined to the person violating it.

In *Sun Life Assurance Co.* v. *Bailey,* 101 Va. 443, 44 S. E. 692, which was an action for defamation against a corporation, the declaration contained two counts. The first count was for libel at common law, and the second count for insulting words under the statute. There was a demurrer to the declaration and each count thereof, and in passing upon the demurrer to the second count the court said:

"The second objection made to this count is that it is an action against a corporation, and that such an action will not lie. This question was raised in this court for the first time, it would seem, in *Reusch* v. *Roanoke, etc., Co.,* 91 Va. 534, 22 S. E. 358, but it was deemed unnecessary to pass upon it.

"That a corporation may be held responsible in an action for the publication of a libel is no longer an open question in the United States courts. *Washington Gas-Light Co.* v. *Lansden,* 172 U. S. 534, 19 S. Ct. 296, 43 L. Ed. 543.

"Now that corporations are allowed by law to transact practically every business that may be carried on by an individual, and may be held responsible, as is well settled, and an action for the publication of a libel by or through their agents, we can see no good reason why they should not be held liable in an action

under the statute for insulting words uttered or published by an agent acting within the scope of his employment, and in the course of the business of the corporation.

"In *Railroad Company* v. *Quigley*, 21 How. 202, 16 L. Ed. 73, the opinion by Campbell, J., says: 'That for acts done by the agents of a corporation, either in *ex contractu* or in *ex delicto*, in the course of its business and of their employment, the corporation is responsible as an individual is responsible under similar circumstances.' "

In view of the above decision, we would consider the question raised by the demurrer in the instant case to have been finally settled in Virginia but for an expression of the court in the more recent case of *Hines* v. *Gravins*, 136 Va. 313, 112 S. E. 869, 118 S. E. 114. The last named case was an action for damages under a declaration containing counts for slander at common law, and insulting words under the statute spoken to the plaintiff by an agent or employee of the railroad company while acting within the scope of his employment. The declaration was demurred to on the ground that publication of neither the slander nor of the insulting words was alleged, and the court in its original opinion sustained the demurrer as to the count for slander but overruled the same as to the two counts alleging insulting words.

While the precise question presented here and decided in *Sun Life Assurance Co.* v. *Bailey, supra,* does not seem to have been raised by the demurrer in *Hines* v. *Gravins, supra,* the original opinion in that case seems to hold that if the agent was acting within the scope of his authority when he spoke the words complained of, the corporation was no doubt liable upon the doctrine of *respondeat superior*.

It appears, however, that upon a rehearing of the case the specific question—"Does the statute authorizing an action for insulting words impose a liability upon a master for compensatory damages, for insulting words uttered by his agent in the course of his employment, when such words are neither authorized nor ratified by the employer?"—was argued and presented. Following the reargument of the case the court stated in its opinion that the members of the court were not in harmony on the subject, and it being unnecessary to decide it "the proper answer to that question is therefore left open for future consideration when it shall be necessary to answer it."

As the decision upon the question in *Sun Life Assurance Co.* v. *Bailey, supra,* is seemingly disregarded in *Hines* v. *Gravins, supra,* it would likewise seem that the former case was either not called to the attention of the learned court in the argument of the above question, or else that the court did not consider it as binding precedent. However that may be, since the question was expressly left open when it was last considered, in view of the verdict of the jury and the conclusions reached on the other points in this case, it now appears necessary to dispose of it.

[1] Both from the modern text-books and decisions it will be seen that corporations are now capable of being sued and being made liable for almost all classes of torts committed by their agents, including libel and slander. It is true that the early doctrine—when corporations consisted almost exclusively of public and charitable organizations—is supposed to have been to the contrary, and a few courts still attempt to draw a distinction between the liability of corporations for libel and that for slander committed by their agents. But, as it is said, now that "corporations have

become the great motive power of society, governing and regulating its chief business affairs;" filling practically every department of business and of human industry, and supplanting individual action in every direction, the old and doubtful doctrine as to the liability of corporations for torts committed by their agents has been forced to give way, even in those cases where motive and intention is an essential element of liability.

It is, therefore, almost universally held in cases of wrongs to the person, as distinguished from personal injuries arising from the agent's negligence, that the ordinary doctrines of agency apply to corporations to this extent: They are responsible for such wrongs committed by an agent, if the wrong was done while the agent was engaged in the ordinary course of his employment and grew out of an act connected with the employment.    In such a case the person who has suffered injury may recover compensatory damages from the corporation as principal, and may recover punitive damages if the principal had authorized the tort, or has subsequently ratified it. See 6 Fletcher's Encyc. Corp. section 3347, and the Supplement of 1921; 1 Cook on Corp. (8th ed.) page 112 to page 122; Newell on Slander and Libel (4th ed.) sections 309, 310; 4 Min. Inst. (3rd ed.) page 467; Burks Pl. & Pr. (2nd ed.) page 211, *et seq.;* 2 Va. Law Reg. (N. S.) page 65; 7 R. C. L. pages 682, 683, 684; Labatt on Master and Servant, section 2376; 5 Thompson on Corp. (2nd ed.) section 5441; and cases cited by above authorities.

[2] Looking at the Virginia cases involving actions under the statute in question, we find that all of them, since the statute was amended in 1849, have treated an action for insulting words entirely as an action for libel or slander, for words actionable *per se*, with two

exceptions; "no demurrer shall preclude a jury from passing thereon," and no publication of the words is necessary.    In all other respects an action under the statute is placed on all fours with an action for defamation at common law.    The rules of evidence are the same, as are also questions in regard to privilege, and inferred malice and actual malice, and in regard to the character and measure of damages.    The truth may also be plead under the statute (sec. 6240 of the Code) allowing this to be done "in any action for defamation of character."    In fact the trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law *is* an action for libel or slander.

In the case of *Chaffin* v. *Lynch*, 84 Va. 884, 6 S. E. 474, the court held that the doctrine of privilege applied to actions for insulting words, saying (on page 887 [6 S. E. 476]): "The adjudged cases to the same effect are almost without number, and they settle the law upon the subject beyond a doubt, not only as to libel or slander at common law, but equally as to insults under the statute.    For, as was said when the case was first before us, *the effect of the statute, since it has been amended, is simply to make a class of words actionable per se, which were not so at common law, and as to which no demurrer shall preclude the jury from passing thereon.*"    (Italics supplied.)

And as also said in the same case reported in 83 Va. 106, 1 S. E. 803: "The truth doubtless is, that when the amendment was made the legislature had arrived at the conclusion that as a means of suppressing duelling, the statute, so far as the civil remedy given by it, was concerned, was a failure    *    *    *."

These general statements have been accepted and acted upon, as shown by the subsequent decisions, from

which it manifestly appears that, in dealing with the statute in its amended form, no weight or importance has been attached to the purpose for which it was originally enacted.

For example: In *Meyers & Co.* v. *Lewis*, 121 Va. 50, 92 S. E. 988, a partnership was sued for insulting words written by one of the partners, without knowledge or participation on the part of the other partner. The doctrines of agency in the case of a partnership and of a corporation, in the matter of torts committed by an agent are discussed at length, and both members of the partnership are held liable. As there was no likelihood of a breach of the peace between the unoffending partner and the plaintiff, the case was rested entirely upon the agency of the other partner. A partnership as such can no more fight a duel than a corporation.

In each of the cases of *Rolland* v. *Batchelder*, 84 Va. 664, 5 S. E. 695; *Boyd* v. *Boyd*, 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173, and *Ramsay* v. *Harrison*, 119 Va. 682, 89 S. E. 977, one of the parties was a woman. In the first two cases the woman was plaintiff, and in the last case the defendant, and yet in each of them an action under the statute was maintained and treated as an action for libel or slander at common law.

[3, 4] In view of the state of the Virginia law on the subject, as above outlined, and of the fact that the use of words forbidden by the statute constitutes a tort of the same character as that of libel or slander, we see no reason why the same doctrines of agency should not apply to a corporation whose agent violates the statute, as are applicable to a corporation whose agent commits a common law tort for which the corporation would be held liable under the same circumstances. It does not seem to us that the original object of the statute, in

the matter of preventing duelling, is any longer entitled to consideration in considering the statute. If that was the only object, it should have been repealed fifty years ago as being obsolete and out of date. It is still a part of our statutory law, and the courts have necessarily given effect to it as written, which is "simply to make a class of words actionable *per se* which were not so at common law."

[5] Upon mature consideration, we feel no doubt in holding that the question left open in *Hines* v. *Gravins, supra,* should be answered in the affirmative. In other words, that a corporation, as any other master, is liable in damages under the statute for insulting words uttered by its agent while engaged in the ordinary course of his employment, and in connection therewith. The trial court was, therefore, right in overrruling the demurrer.

The next assignment of error is the refusal of the trial court to set aside the verdict of the jury and enter judgment for the defendant on the ground that the evidence is insufficient to support the verdict. The question presented under this assignment make it necessary to review the evidence produced at the trial, which is both complicated and in some particulars in irreconcilible conflict.

It appears that defendant owns and operates a system of chain stores, one of which, No. 20, is located in the city of Norfolk, and in charge of one H. E. Maroney as general manager. The defendant's stores are "serviced" by the Willmark Service System, a corporation having its principal office in New York. A part, at least, of the service performed by this company is to send out "field crews" to the cities in which defendant's stores are situated to "shop" the stores in the guise of ordinary customers for the purpose of ascer-

taining whether the clerks are efficient and properly
record their sales, etc., and to make such other obser-
vations as to the methods and conduct of the sales
force as are to defendant's interests.    On January 13,
1926, one of these crews was operating in Norfolk
under the direction of one, F. H. Eales, as "crew
manager."    At that time plaintiff was in defendant's
employ as salewoman in charge of the infants depart-
ment, which position she had occupied for about two
years.    She was a young married woman who had been
deserted by her husband and supported herself and her
seven year old child.    In the late afternoon of the day
mentioned, one of Eales' service crew, a Miss Geiger,
purchased from the plaintiff certain articles of mer-
chandise amounting to seventy-five cents.    This wit-
ness testifies that she handed the plaintiff three quarters
in payment, and received from her, along with the
goods, a carbon copy of the sales ticket showing the
articles purchased and the price, but observed that
plaintiff rung up only twenty-five cents on the cash
register and placed fifty cents on the ledge of the
machine.    She also testified that after she had walked
off a little way she saw the plaintiff take the original
sales ticket from the spindle and "doing something
with it" that she could not see, "but it looked to me
as though she were erasing or doing something."    Miss
Geiger says she then went immediately to Eales' hotel
and reported the matter to him.    Eales came at once
to the store and reported what Miss Geiger had told
him to Maroney.    After checking up the number on
the duplicate sales ticket in order to identify the clerk
who made the sale, Maroney sent for the plaintiff and
also the original sales tickets.    When she arrived at
his office, Maroney introduced plaintiff to Eales, saying
to her:    "This man will take up this matter with you—

the matter what I sent for you for." Eales thereupon took plaintiff into a room back of Maroney's office, where he detained her until after the store closed and all the other clerks had left, and then took her into Maroney's office where she signed a statement, addressed to W. T. Grant Company, to the effect that she intended to take the fifty cents; and Eales and Maroney also signed the same as witnesses. Maroney then dismissed plaintiff from defendant's employ, and after he and Eales had detained her with some further questioning in regard to the matter she was allowed to leave the office and go home. The cash register was afterwards checked up and found to contain $3.34 more than the sales tickets called for.

Plaintiff admitted in her testimony that she made the sale in question to a woman she had never seen before, but denied that she only rung up twenty-five cents on the register, or altered the original sales ticket. She also testified that the fifty cents Miss Geiger claims to have seen on the register belonged to a customer who had made a purchase earlier in the day and who had left without receiving her change; and that as customary in such cases, she had placed the money on the register in case it was called for, and as it was not, afterwards placed it in the draw. In respect to this being the usual procedure she was corroborated by the other saleswoman in her department. Plaintiff says she attempted to make the above explanation to Eales, but he would not allow her to do so. It was also shown by defendant's cashier, and witness, that a number of other registers were over in small sums of cash on the same day, and such was a daily occurrence, but when there was a large discrepancy she called Mr. Maroney's attention to it.

That the evidence is sufficient, as upon a demurrer,

to sustain a verdict for insulting words is not controverted, but it is contended by counsel for defendant that it is insufficient to sustain the charge of false imprisonment alleged in the declaration, for the reason that the doors and windows of the room were open, and no physical force was used.

Without going into the details of plaintiff's evidence on the subject, it shows that after she had been taken by Eales into the room adjoining Maroney's office, he charged her, among other things, with changing the sales ticket and taking fifty cents; took her to the cloak room and made her shake her own coat and that of a girl friend, and also turn out the pockets of the clothing she had on. Upon plaintiff's denial that she had taken fifty cents, or altered the sales ticket, and of his other accusations, and discovering no money, Eales then accused plaintiff of intending to take the fifty cents, and threatened her with the police and jail unless she wrote a letter admitting such intention. Plaintiff denied this charge also and refused to write such a letter, and Eales then said: "We will see what the judge says about that."

After the store was closed and the other saleswomen had left for the day, and plaintiff had been detained by Eales in the room referred to under examination and charges of the character above outlined for about three-quarters of an hour, Maroney invited them into his private office, where Eales renewed his threats, and she was detained about half an hour longer. In answer to questions as to why she remained for that length of time, plaintiff testified that Eales told her if she left they would take her to jail; and that she asked to be allowed to go home, but the only condition upon which she was told she could leave was that she should write a letter which Eales was to dictate. On cross examination plaintiff testified in part as follows:

"Q. As a matter of fact, Mrs. Owens, Mr. Eales did not imprison you there or did not threaten you at all, did he?

"A. Yes, sir; he did.

"Q. He did?

"A. Yes, sir; unless I wrote the letter which he dictated.

"Q. In what manner did he imprison you in that office?

"A. The only manner that he placed himself in the chair between me and the door and told me I was going to write that or he was going to take me to jail.

"Q. The manner in which he placed himself between you and the door?

"A. Yes, sir. He told me if I didn't write that letter he was going to dictate I couldn't go home and cook my baby any supper, and I had my child at home at that time to get supper for.

＊      ＊      ＊      ＊      ＊      ＊      ＊      ＊

"Q. What were the next words that he used?

"A. He said: 'I will tell you what I am going to do. I am not going to take you round to jail.' He says: 'But I am going to dictate a letter to you and you are going to write it.' He says: 'If you don't I am not going to let you go home and cook your youngster any supper.' And he said: 'How would you like for your youngster to come to jail and see his mother in jail?'"

It appears from plaintiff's testimony that, acting under the force of these threats and others of like character, she finally consented to do as Eales demanded, and he thereupon secured paper and carbon which he placed before her on Maroney's desk, and she wrote at his dictation the statement referred to, which she repudiated on the witness stand as untrue.

Plaintiff further testified that after she had signed the "letter" Eales took her into another section of Maroney's office and kept her there for some minutes in an effort to make her confess she had taken money before, which she refused to do.

[6, 7] Accepting plaintiff's evidence as true, we feel no hesitation in saying that the jury was justified in finding the verdict it did upon the count for false imprisonment, under the circumstances.    False imprisonment is defined as " 'the direct restraint by one person of the physical liberty of another without adequate legal justification.' "    11 R. C. L. page 791.

And in the same work on page 794, it is said:

[8] "The essential thing is restraint of the person. This may be caused by threats as well as by actual force; and the threats may be by conduct or by words."

And again on page 793:

"Any exercise of force, or express or implied threats of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is imprisonment."    These statements are fully sustained by the decisions.

In *Gillingham* v. *Ohio River Ry. Co.*, 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827, the court said:

" 'False imprisonment is any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere.'    Bishop on Non-Contract Law, section 206, and cases cited.    'False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing by force or threats an unlawful restraint upon a man's freedom of locomotion.'    *Prima facie*, any restraint put by fear or force upon the actions of another is unlawful, and constitutes false imprisonment

unless a showing of justification makes it a true or
legal imprisonment.' Cooley on Torts, 196."

In *Comer* v. *Knowles*, 17 Kan. 436, the court said
this:

"The wrong may be committed by words alone, or
by acts alone, or by both, and by merely operating on
the will of the individual or by personal violence, or by
both. It is not necessary that the individual be con-
fined within a prison or within walls, or that he be
assaulted or even touched. It is not necessary that
there should be any injury done to the individual
person, or to his character or reputation. Nor is it
necessary that the wrongful act be under the color of
any legal or judicial proceeding. All that is necessary
is that the individual be restrained of his liberty with-
out sufficient cause therefor, and by words or acts
which he fears to disregard."

[9] Numerous decisions illustrating the above rules
might be cited, but as each case must be determined
according to its particular facts and circumstances it
would seem to be unnecessary. We deem it sufficient
to say that, while Maroney and Eales, or either of
them, would have been justified in detaining the plain-
tiff for a reasonable time, in a reasonable way, for the
purpose of having her explain the circumstances re-
ported by Miss Geiger; neither of them was justified
in detaining her with the bullying tactics and threats
detailed by her, in an attempt to prove her guilt, or to
make her confess that she intended to take the fifty
cents in question. Such restraint was unlawful, and
constituted a false imprisonment in law, and if the
jury believed her testimony they had a right to so find.

It is next contended that Eales was the agent of
Willmark Service System, an independent contractor,
and the W. T. Grant Company is not liable for his

acts in the premises. The written contract between the two concerns was not offered in evidence and we are, therefore, unable to determine whether the independent contractor is, or is not, applicable to the services to be performed under the contract; but in view of the facts of this case it is not necessary to decide that question.

[10] The uncontradicted evidence shows that Maroney, the defendant's general manager of the Norfolk store, expressly turned plaintiff over to Eales for the purpose of having him investigate the alleged irregularity and in order that he (Maroney) might act upon the result of the investigation as he saw fit. He also delivered to Eales the original and duplicate sales tickets and other data in his possession, and Eales was in consultation with Maroney from time to time throughout the proceedings. Eales and Mrs. Owens were in Maroney's private office, upon the latter's invitation, at the time the "letter" was written and signed, and Maroney read and witnessed it, and then discharged plaintiff. It is manifest from the evidence given by Maroney and Eales that the purpose of obtaining the statement was to forestall as far as possible any legal action by Mrs. Owens against W. T. Grant Company, and in such event to use same as evidence, as was done in the trial of this case. It was not necessary to secure the statement in order to discharge plaintiff. She worked by the week and Maroney could have discharged her most any time with or without cause. In fact the jury might have found not only that Maroney and Eales acted together in making the investigation and obtaining the written statement from Mrs. Owens, but that Eales himself was at the time acting in defendant's behalf and as its agent with the express authority and consent of its general man-

ager, Mr. Maroney.   Such being the case, we are of
the opinion that the defendant is liable under the
doctrine of *respondeat superior* for the torts committed
by Eales in the course of and in connection with the
investigation made by him and in his dealings with
Mrs. Owens.   With respect to this particular under-
taking, Eales was a special agent of the defendant, even
though he was employed by Willmark Service System,
and that concern may have been an independent con-
tractor under its contract with the defendant.

The language used by Judge Kelly in the case of
*Clinchfield Coal Corp.* v. *Redd,* 123 Va. 420, 96 S. E.
836, seems applicable here, where he said:

"The owner of an operation or enterprise cannot, by
securing through other special agents, even though
they be officers of the law for the prosecution of
offenders around the plant, obtain any immunity from
liability for malicious prosecutions which such owner
would not be equally entitled to if he himself directly
selected and paid the agents and expressly retained
the power of control and removal.   When he under-
takes these functions, his duties are personal and non-
assignable, and where he arranges for and accepts the
service, he will not be permitted to say that the rela-
tionship of master and servant does not exist."

[11] It is also contended that the verdict of the jury
should not be allowed to stand because the damages
awarded are so excessive as to demonstrate that they
are punitive and not merely compensatory.   We see
no merit in this assignment.   The plaintiff did not
ask for punitive damages, and the jury were correctly
instructed on that subject at the request of the defend-
ant.   The amount awarded constituted the combined
damages allowed for both of the alleged torts, and there
is nothing in the size of the verdict to indicate that it
was intended to be punitive in character.

[12] As said in *Boyd* v. *Boyd*, 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173: "The law presumes that damages result from the utterance of insulting words, made actionable by our statute, just as it does when the words uttered are actionable *per se;* and it is not necessary in either case, in order to recover, to prove actual or pecuniary loss."

[13] And in an action for false imprisonment, mental pain and suffering, and the indignity and humiliation inflicted upon the plaintiff constitute just basis for compensatory damages. *Sands* v. *Norvell*, 126 Va. 384, 101 S. E. 569; *Jones* v. *Hebdo*, 88 W. Va. 386, 106 S. E. 898.

Counsel for defendant severely attacks the credibility of Mrs. Owens in his argument on the ground that it is contradicted by Eales and Maroney and because the original sales ticket referred to shows on its face that it had been changed; and insists that the verdict should be set aside as without sufficient evidence to support it for that reason.

[14, 15] Argument to the same effect was made by counsel for the plaintiff in error in the case of *Rauch & Co.* v. *Graham*, 145 Va. 681, 134 S. E. 692, but, as the court there said: "The argument is not sound. On a demurrer to the evidence, this court has nothing to do with the preponderance of the evidence, or the credibility of the witnesses. *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245 [108 S. E. 15]; *Norfolk, etc., Co.* v. *Thayer Co.*, 137 Va. 294 [119 S. E. 107]."

We might, however, observe that while none of the other witnesses admit that they heard anything that took place between Eales and Mrs. Owens, and her testimony is unsupported with respect to it, we find corroboration of her testimony, upon other matters, in the record; and it may be said that Eales' evidence is

not entirely free from equivocation and evasion. Plaintiff not only denies that she changed the sales ticket, but that she even saw it from the time it was taken from the spindle by Maroney's orders until it was exhibited at the trial. The jury, who saw the tickets in question and heard the witnesses, believed what she said, and as her evidence is not incredible, this court cannot violate the well established rule on the subject and invade its exclusive province.

The objections pointed out as to the instructions having been disposed of by what has been already said, it is unnecessary to deal with them.

The judgment is affirmed.

*Affirmed.*

Christian, J., dissenting:

The demurrer in this case presents the proposition that a corporation, acting only by and through agents, cannot be liable for insulting words under section 5781 of the Virginia Code. I think that is too broad a statement in view of the *activities* of corporations in modern time. But I think it is equally contrary to sound reason and justice to hold that all corporations without regard to their purposes and business may be mulcted in damages for gratuitous insulting words of any agent no matter what are his duties, if uttered in connection with the corporate business.

To illustrate, if a negro porter in one of Richmond's large department stores should insult some lady customer, what justice can there be in permitting a jury to take the money of innocent stockholders in shape of damages and give it to the lady as balm to her injured feelings? Especially when we all know that the amount of damages is greatly exaggerated by the relative social status of the parties and other emotional

considerations.   The directors and stockholders would unquestionably condemn his conduct and visit upon him all the punishment in their power, but under the ruling of this court only the innocent stockholders' money can atone for insulting words.

It is true that the opinion holds that by analogy to common law libel and slander, the corporation may pelad justification.   What justification can there be for insulting words?   It is a manifestation of a malign nature or uncontrolled temper, which only punishment will vindicate.   If damages are recovered from stockholders does not the law make the innocent suffer for the guilty?

Should the directors, management and stockholders undertake to apologize, all they could do would be to say that we are sorry and our agent was entirely unauthorized to insult you.   But the answer to this would be the insulting words were uttered while "the agent was engaged in the ordinary course of his employment and grew out of an act connected within the employment."   What employment can warrant the use of insulting words to a person dealing with a corporation?

Revenge is the impelling motive of human nature for all injuries, and most unsocial and destructive to character and society, which civilized government aims in every way to repress, and while out of regard for the weakness of human nature, our legislature furnished monetary vindication for insulting words, that sometimes expressed itself in the crime of murder and mayhem, yet it should not be extended.   The extent of the government in this legislation was repressive rather than to put a monetary premium upon the spirit of revenge and thus develop it.

It is true that it is the purpose of good government

to give a remedy for every wrong, but while it does so, it says to the citizen vengence is mine, and the doctrine of scape-goats has no place in modern jurisprudence.

While the law must recognize the ever widening field of operation of corporations, and adjust the principles of justice to meet modern conditions, it is not the part of wisdom and sound public policy to weaken or abrogate the sound principle of law known as *respondeat superior.*

The majority opinion states that courts have "in the trial of cases for insulting words adopted the rules applicable at common law to slander and libel, except as forbidden by statute. In suits at common law for libel and slander the measure of compensatory damages is injury to reputation and standing in the community, so that where there is no publication there can be no recovery.

Judge Prentis in the case of *Hines* v. *Gravins,* 136 Va. 313, 112 S. E. 869, 118 S. E. 114, states that Virginia and Mississippi have similar statutes for insulting words; the latter holds that there can be no recovery of punitive damages in the absence of actual damages, and as at common law there can be no damage to reputation except by publication of slanderous words, the same rule of law applies to insulting words. He approved that ruling as sound in reason and principle, and the difference among the judges of the Supreme Court of Appeals upon that point at the rehearing does not impair its force and effect.

It is unnecessary to quote authority that in Virginia there can be no recovery of compensatory damages for injured feelings unaccompanied by actual damages, for there is no rule by which they can be measured.

The statute for insulting words is punitive in its intent, and by force of its language, and to give it the

construction placed upon it in the majority opinion will destroy the universal rule of law, that a corporation is not liable for punitive damages unless it authorized the malicious act of the agent or subsequently ratified the same.

It may be said that is not the purpose of the court's ruling, but as a practical question how can the courts, as long as human nature is as it is, restrain juries from increasing the damages in proportion to their feelings against the insulter?

Does not the case under consideration demonstrate the unvarying danger of injustice from the ruling of the court, where the plaintiff is a young woman, and the defendant a corporation which denied the authority of the agent, to even act in the premises, and the plaintiff was allowed to recover?

For the above reasons I believe the judgment should be reversed and the case remanded for a new trial upon the second count in the declaration.