## CIRCUIT COURT OF FAIRFAX COUNTY

Thomas Hutchins

v.

David B. Cecil
and Kelli A. Cecil

February 2, 1998

Case No. C159257

BY JUDGE DENNIS J. SMITH

The Demurrer for this case was heard on Friday, December 5, 1997. The Court heard argument and took the matter under advisement.

### I. *Procedural History*

Following an acquittal of criminal charges, Mr. Thomas Hutchins sued Mr. David Cecil and Mrs. Kelli Cecil for malicious prosecution. The Cecils counterclaimed against Hutchins. Count I of the Counterclaim, titled "Insulting Words Directed at Kelli A. Cecil," alleges Hutchins called Mrs. Cecil a "bitch" in public. Mrs. Cecil claims the words were insulting, tended to violence and breaches of the peace, and she was insulted, offended, and frightened. Count I prays for $25,000.00 in compensatory and $25,000.00 in punitive damages. Count II of the Counterclaim, titled "Insulting Words Directed at David B. Cecil," alleges Mr. Hutchins called Mr. Cecil a "motherfucker" in public. Mr. Cecil claims the words were insulting, tended to violence and breaches of the peace, and he was insulted, offended, and frightened. Count II prays for $25,000.00 in compensatory and $25,000.00 in punitive damages. Count III of the Counterclaim is for assault and is not at issue in this Demurrer.

Hutchins demurs to Counts I and II of the Counterclaim and to the prayer for punitive damages. Hutchins claims that a cause of action under Va. Code § 8.01-45 is completely assimilated into common law libel or slander. Hutchins argues that defamatory causes for action require a false statement, and the words "bitch" and "motherfucker" are incapable of being a false statement of fact; therefore, calling Mrs. Cecil a "bitch" does not convey the false representation that she is a female dog, nor does calling Mr. Cecil a "motherfucker" convey the false representation that he engaged in incest. Hutchins also claims that the terms complained of here are not actionable as defamation *per se* because they do not impute the Cecils committed a criminal offense involving moral turpitude or that they are infected with a contagious disease or that they are unfit at work, nor did the words prejudice them in their profession or trade. Hutchins argues the Cecils' failure to plead special damages precludes them for proceeding with Count I and Count II as a matter of law. Finally, Hutchins asserts that the Cecils have failed to specifically plead facts in support of punitive damages.

The Cecils assert that they have sufficiently pleaded a cause of action by stating the precise words spoken and alleging the epithets were insulting and tended to violence and breach of the peace. Additionally, the Cecils argue that these words do have defamatory meaning; they claim the usual construction of "bitch" is a spiteful or sexually promiscuous women, and "motherfucker" is commonly known to mean an individual who would engage in incest. The Cecils also assert that they have pleaded special damages. Regarding punitive damages, the Cecils claim Hutchins' behavior of cursing at them in public showed willful or wanton conduct or such recklessness as evinces a conscious disregard for the safety of others, thereby sufficiently setting forth their entitlement to punitive damages.

## II. *Discussion*

Under Va. Code § 8.01-45, words must "tend to violence and breach of the peace" to qualify as actionable insulting words. *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439 (1996). To determine this on Demurrer, the Court must look to the circumstances alleged in the Counterclaim, which simply states that the offending statements were made in public and tended to violence and a breach of the peace. The mere statements that the insults were made in public and tended to violence and a breach of the peace by themselves do not sufficiently state a compensable claim under Va. Code § 8.01-45. Similarly, the statement that Hutchins' behavior was willful and

wanton without any supporting facts is not sufficient by itself to support a prayer of punitive damages. The Demurrer is therefore sustained. The remaining question and much more complex question is whether leave to amend should be granted. In resolving this question, the Court must address whether the uttered words could possibly constitute actionable "insulting words" under Va. Code § 8.01-45 under these circumstances.

Virginia Code § 8.01-45 states "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." The insulting words statute was originally enacted as an anti-dueling statute. *W. T. Grant Co. v. Owens*, 149 Va. 906 (1928). Although the statute's original purpose is obsolete, it continues today to "prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment . . . by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury." *Hines v. Gravins*, 136 Va. 313 (1922), *cert. denied*, 265 U.S. 583 (1924). In *Wright v. Cofield*, 146 Va. 637 (1926), the Court stated the purpose of the statute is to prevent the use of language by one towards another likely to bring about a personal encounter (citing *Hines*).

Despite the broad language regarding the purpose of the insulting words statute, a line of cases emerged holding that insulting words actions were almost completely assimilated into the common law action for libel and slander. *Carwile v. Richmond Newspapers*, 196 Va. 1, 6 (1954); *Mills v. Kingsport Times-News*, 475 F. Supp. 1005 (W.D. Va. 1979); *Shupe v. Rose's Stores*, 213 Va. 374, 375 (1972); *W. T. Grant Co. v. Owens*, 149 Va. 906 (1928). In *Owens* the court stated Virginia case law treated the action for insulting words entirely as an action for libel or slander, for words actionable *per se*, with the exception that no publication of the words is necessary. "In fact the trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law, is an action for libel or slander." *Id.*

In *Crawford v. United Steel Workers, AFL-CIO*, 230 Va. 217 (1985), *cert. denied*, 475 U.S. 1095 (1986), the Virginia Supreme Court was confronted with an action for precisely the kinds of words allegedly spoken regarding Mr. and Mrs. Cecil. The facts of the case involved a strike by union workers against their employer, the Virginia Lime Company. Plaintiffs, who were employees not participating in the strike, sued under Va. Code § 8.01-45 for being called names such as "motherfucker" and

"cocksucker" by the strikers. The trial court did not rule that the words were defamatory but instead ruled that they were actionable because they tend to violence and breach the peace in violation of Va. Code § 8.01-45. The Virginia Supreme Court, in a plurality opinion, reversed the trial court, holding that federal labor law limited state control over speech used in labor disputes. The reason for this was that labor disputes are heated affairs characterized by bitter and extreme charges and accusations and that federal policy favored uninhibited, robust, and wide-open debate in labor disputes. *Id.*, citing *Linn v. Plant Guard Workers*, 383 U.S. 53 (1966), and *Letter Carriers v. Austin*, 418 U.S. 264 (1974). In order to effectuate these policy concerns, the court concluded that in labor disputes, state libel actions were preempted in all but a narrow class of cases — that only knowing falsehoods or statements made with reckless disregard for their truth or falsity could serve as the basis for liability. *Id.* at 230. Further, the plurality in *Crawford* argued that words like "motherfucker," while reprehensible, under the circumstances of a labor dispute were merely loose language used in an economic and political controversy, and not false facts. Instead, they were expression of opinions, and although pejorative, they were protected under federal labor law. For these reasons, the plurality held that the epithets under the circumstances of a labor dispute would not support liability. However, *Crawford* is distinguishable from the case at bar in that the holding of the majority was based on the fact that the insulting words were spoken in the context of a labor dispute.

The concurring opinion of Justice Cochran in *Crawford* opined that only words which are actionable as defamation could be the basis for an action under Va. Code § 8.01-45; therefore, statements which could not be taken as representations of fact could never qualify as "insulting words" for purposes of a civil action under Va. Code § 8.01-45. Justices Russell, Carrico, and Stephenson wrote in dissent that Va. Code § 8.01-45 also encompasses an action for fighting words, and they recognized a continuing distinction between the insulting words statute and common law defamation. Recently, the Virginia Supreme Court has rejected Justice Cochran's construction of Va. Code § 8.01-45 which completely assimilates the insulting words statute into the common law action for libel and slander. In *Allen & Rocks, Inc. v. Dowell*, 252 Va. 439 (1996), the Court held unequivocally that the plain meaning of this statute "requires that the words used must not only be insults, but they must also 'tend to violence and breach of the peace'," *Id.* at 441, thus clearly deposing the notion that a claim under Va. Code § 8.01-45 is no different from a common law defamation action. In addition, the assimilation doctrine ignores the statute's purpose, which is to

prevent breaches of the peace and avoid personal encounters between individuals. It is an ironic argument that fighting words would not be actionable under what was originally an anti-dueling statute.

We are a society that places significant value in permitting citizens a wide range of individual expressive freedom, not the least of which is the freedom of speech. This freedom is not limited to political and scientific discussion but also includes speech that is controversial, unpopular, pornographic, and offensive. The First Amendment states Congress shall make no law abridging freedom of speech. In fact, the United States Supreme Court has struck down as vague and overbroad state laws designed to penalize insulting words. *See, Gooding v. Wilson*, 405 U.S. 518 (1972), and *Lewis v. City of New Orleans*, 415 U.S. 130 (1974). However, no constitutional right is unqualified, and freedom of speech is no exception. There are several classes of speech which can be punished without violating the First Amendment. In both *Gooding* and *Lewis*, the majority struck down the laws as the state courts had not adopted precise definitions of the statutory terms restricting their application to true "fighting words," as required by *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). In *Chaplinsky*, the United States Supreme Court held that the Constitution *does not* protect insulting or "fighting words," those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. *Gooding*, at 240, citing *Chaplinsky*, at 572-73. The "fighting words" doctrine articulated in *Chaplinsky* doctrine remains alive today. A state may criminally penalize a verbal attack directed at a particular individual in a face to face confrontation that presents a clear and present danger of violent physical reaction. See *Cohen v. California*, 403 U.S. 15, 20 (1971); Rodney Smolla, *Free Speech in an Open Society*, 161-62 (1992). Accordingly, there is no constitutional infirmity in a statute which affords a civil remedy to anyone who is aggrieved by such speech.

Justice Russell concludes his dissent in *Crawford* with the following:

> Although the remedy which the statute provides for defamatory words has been assimilated to an action for libel or slander, its remedy for true "fighting words" remains. The General Assembly has said so repeatedly, and we have never said otherwise. The effect of our insulting words statute, therefore, has been narrowed in precisely the same way as New Hampshire's was in *Chaplinsky*.
>
> I would hold that Code § 8.01-45 affords an independent cause of action to redress true "fighting words" which tend to provoke violence and breach of the peace, as distinguished from words

merely defamatory, and that such actions are not assimilated to actions for libel or slander. *Id.* at 244.

I am convinced by the logic of Justice Russell's dissent in *Crawford*, joined by Justices Carrico and Stephenson, which distinguishes between fighting words and defamation, and argues that Va. Code § 8.01-45 permits a recovery for both. Therefore, I find that Va. Code § 8.01-45 is not limited to false representations of fact but also encompasses an action for fighting words. I reach this conclusion based on the plain language of Va. Code § 8.01-45, the statute's original purpose, and the dissent in *Crawford*. In doing so, I am also more fully effectuating the purpose of the statute and breaking from the line of cases that considered common law slander and libel synonymous with Va. Code § 8.01-45. In addition, I construe the statute to only penalize words used in a verbal attack directed at a particular individual in a face to face confrontation that presents a clear and present danger of a violent physical reaction. This statute is therefore constitutional under *Chaplinsky* and *Cohen* and does not suffer from being a vague or overbroad statute such as the laws in *Gooding* and *Lewis*. If the words uttered could be "fighting words" under the circumstances alleged, that is, if they could reasonably be construed to have been insults provoking imminent violence and a breach of the peace, it is for the jury as representatives of the community to decide if an individual's words have violated the insulting words statute and then determine what damages, if any, to award.

As for the argument that this will open a floodgate of litigation, the statute was enacted by the legislature and must be construed by the Court. The impact on existing caseloads does not dictate this Court's interpretation of a valid statute. Additionally, the Court notes that the common sense of juries will serve to limit recoveries, thereby limiting the filing of such actions.

Turning to the case at bar, I find Counterclaimants have not sufficiently pleaded a cause of action under Va. Code § 8.01-45; however, they are granted leave to amend their Motion for Judgment on or before February 13, 1998.