## Richmond.

Chaffin v. Lynch.

· May 10th, 1888.

Absent, Richardson, J.

1. Libel and slander—*Insulting words—Justification—Privilege.*—Code 1873, ch. 177, § 50, and the rule as to privileged communications, apply as well to actions under Code 1873, ch. 145, § 2, for insulting words, as to common law actions of libel and slander.

2. Idem—*Privileged communications—Province of jury.*—Where in action for defamation the defence is that of privileged communication, the question for the jury is, whether defendant honestly believed the language used to be true, and published it without malice, in fair self-defence, or in the reasonable protection of his own interests. And if plaintiff failed to prove actual malice, defendant is entitled to a verdict, whether the language used was true or false, unless defendant overstepped the line of legitimate defence and became an aggressor.

3. Court of appeals—*Trial court—Reversal—Second trial.*—Where on appeal a new trial has been granted, it is the duty of the · circuit court, at the second trial, to adopt the views set forth by this court in its opinion, and instruct the jury in accordance therewith, provided the facts are the same and the instructions are asked for.

Error to judgment of circuit court of city of Richmond, rendered June 13th, 1887, in an action for insulting words, wherein D. H. Lynch was plaintiff, and R. B. Chaffin was defendant. This case is sequel to the case of *Chaffin* v. *Lynch*, 83 Va., 106. At the second trial the jury found a verdict for the plaintiff, and assessed his damages at $1,200. The defendant moved the court to set aside the verdict and grant him a

new trial, which motion the court overruled, and entered judgment in accordance with the verdict. The defendant excepted to this, as well as to other rulings made by the court during the progress of the trial, and asking the evidence be certified, the case is here on writ of error and *supersedeas*. Opinion states the case.

*Guy & Gilliam* and *Kean & Guy*, for the plaintiff in error.

*Thomas G. Jackson, J. Samuel Parrish*, and *Edgar Allan*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

When this case was before this court, at its March term, 1887, (83 Va., 106,) the judgment was reversed, and the case remanded to the circuit court for a new trial, to be had in conformity with the views of this court expressed in a written opinion filed with the record. The case is again before us on a writ of error to a judgment of the circuit court, rendered on the 13th of June, 1887, and the record discloses the fact that the new trial ordered by this court was not had in conformity with the views contained in the opinion filed as aforesaid. Indeed, instructions, framed in the very language of that opinion, in laying down certain general principles applicable to the case, and which the defendant moved the court to give to the jury, were refused, and we are unable to discover in the record any ground for such refusal. The case was carefully considered by the court when formerly here, and the opinion delivered on that occasion embodied the deliberate sentiments of the court upon every point arising in the case; and it was supposed that they were expressed with sufficient clearness to prevent any doubt or misapprehension respecting them. Effect, however, has not been given to them, and the case is here a second time.

Among other things, the court in its opinion declared (what, indeed, is an elementary principle, fully supported by the cases cited) that to establish a privileged communication, it must appear—*first,* that the occasion was privileged ; and, *secondly,* that the occasion was used in a privileged way; that is to say, that it was used *bona fide* and without malice. It was also said that the first of these questions is for the court, and the second for the jury. And upon the undisputed facts as they appeared in the record, the court had no hesitation in holding that the occasion of the publication declared on was privileged. Yet, notwithstanding the facts on the second trial, as the record shows, were substantially the same as on the first—certainly they are not less favorable for the defendant—the circuit court refused to instruct the jury that the occasion was privileged; and, moreover, of its own motion, instructed them, in substance, that if they believed the language of the publication was not true, and that the defendant did not have reasonable ground for believing it to be true, and published the same from a motive of ill-will, etc., they should find for the plaintiff.

This instruction was misleading, and consequently erroneous. The occasion being privileged, the question for the jury was, not whether the language used was true, or whether the defendant had reasonable ground to believe it to be true, but whether in point of fact he honestly believed it to be true, and published it without malice, in fair self-defence, or in the reasonable protection of his own interests. And if the jury believed from the evidence that such was the fact, or rather if the plaintiff failed to show that such was not the fact (*i. e.,* if he failed to show malice in fact or actual malice), then the communication was protected, and the defendant was entitled to a verdict, no matter whether the imputations contained in the publication were true or false.

In *Todd* v. *Hawkins,* 8 C. and P., 88 (34 Eng. C. L., 304), a case often referred to, Baron Alderson, in summing up to the jury, said : " The question you have to try is, not whether the

plaintiff was guilty of the charges laid against him, but whether, although the defendant may have acted rashly, he wrote the letter *bona fide.* The whole of the circumstances are before you, and the occasion is one which *prima facie* justifies the letter. If, however, the defendant has availed himself of the occasion for malicious purposes, he must answer for what he has done. If, on the other hand, he has used expressions however harsh, hasty, or untrue, yet *bona fide,* and believing them to be true, he was justified in so doing, and your verdict ought to be for the defendant."

The language of Baron Parke in *Toogood* v. *Spyring,* 1 C. & M. & R., 181, is equally strong. Referring to privileged communications, it was said by that learned judge, that " the occasion prevents the inference of malice which the law draws from unauthorized communications, and affords a qualified defence depending upon the absence of actual malice. If fairly warranted by any reasonable occasion or exigency, and honestly made, such communications are protected for the common convenience and welfare of society; and the law," he added, " has not restricted the right to make them within any narrow limits."

The adjudged cases to the same effect are almost without number, and they settle the law upon the subject beyond a doubt, not only as to libel or slander at common law, but equally as to insults under the statute. For, as was said when the case was first before us, the effect of the statute, since it has been amended, is simply to make a certain class of words actionable *per se,* which were not so at common law, and as to which no demurrer shall preclude the jury from passing thereon. It enacts as follows : " All words which, from their usual construction and common acceptation, are construed as insults, and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." Code 1873, ch. 145, sec. 2; 4 Min. Insts., 378, *et seq.* Hence, there being nothing in the statute to the contrary, a communi-

cation which would be privileged at common law, is, if made under similar circumstances, privileged in an action under the statute for insults. The statute (Code 1873, ch. 172, sec. 50,) permitting the defendant "in any action for defamation" to justify by proving the truth of the words complained of, can no more be construed as confining the defence to proving the truth of the words declared on in an action for insults, than in an ordinary action for libel or slander; for the statute applies to both classes of actions alike, and according to any other construction, the common law doctrine of privileged communications is abrogated in Virginia, which surely the legislature never intended.

At the trial the defendant moved the court to instruct the jury as follows:

1. "The jury are instructed that the law is that every man has a right to defend his character against false aspersion; that it is a duty he owes to himself and to his family; and that if he is attacked in a newspaper he may write to that paper to rebut the charges, and may at the same time retort upon his assailant, when such retort is a necessary part of his defence and fairly arises out of the charges made against him. And if they shall believe from the evidence that although the language used by the defendant about the plaintiff was not true, yet that the defendant, in good faith, believed that it was true, and that it was used honestly, without malice, in self-defence, and in the reasonable protection of his own interest, that it is their duty to find for the defendant.

2. "Under the circumstances of this case the occasion of the publication by the defendant of the language sued on was clearly privileged, and unless the jury believe from the evidence that the privilege has been abused—that is to say, that the defendant has availed himself of the occasion to gratify his malice against the plaintiff, and not reasonably and honestly to act in the performance of a duty or in the protection of his own interest—they are instructed to find for the defendant.

3. "The jury are instructed that although they believe from the evidence that the language complained of, as used by the defendant in his card published in the Dispatch of the 12th of March, 1884, is not true, yet that the defendant, in good faith, believed it to be true, and that it was used honestly, without malice, in self-defence, and in the reasonable protection of his own interests, they must find for the defendant."

These instructions correctly propound the law, and ought to have been given. The principle enunciated in the first, namely, that a man is morally bound to defend his character against false aspersion, when taken in the general sense in which it was intended, is a sound one, and was approved by this court on the former appeal. By this it is not meant that an absolute obligation is imposed upon a man to rush into print to defend himself whenever he is assailed in a newspaper, no matter what the circumstances may be; but only that when honestly defending his character against false aspersion, his communication, if within the limits of the occasion, is protected, because made in the performance of a moral duty.

A man writes to another, informing him that his servant is dishonest or untrustworthy; or writes to a woman, informing her that the man she proposes to marry is unworthy of her hand; or where words are spoken of a tradesman to the effect that he will soon be a bankrupt, when communicated in confidence and friendship as a caution; in these, and in many other similar cases of which the adjudged cases afford illustrations, the communications, if made *bona fide* and without malice, are privileged, because made in the performance of a moral duty. Bull. N. P., 8; 3 Steph. N. P., 2225, 2564, *et seq.; Dillard* v. *Collins*, 25 Gratt., 343. And a communication made in self-defence is protected upon the same ground. So that, generally speaking, a man does owe a duty to himself and to his family "to defend his character against false aspersion," as the instruction declares. If he does not, it is difficult to imagine any duty that he does owe to himself or to anybody else.

The fourth and last instruction, however, offered by the defendant was rightly refused. It announces, in substance, that if in the publication declared on, the defendant honestly believed he was discharging a duty, the verdict must be for him; in other words, that a communication is privileged, if made *bona fide.* This is not correct; for although the occasion may be privileged, yet if the communication complained of goes beyond the occasion, and is unnecessarily defamatory of the plaintiff, or is more extensively published than the circumstances of the case reasonably require; in these, and in other like cases which might be mentioned as illustrations, the publication is not protected, though the defendant may have honestly believed that in all he did he was discharging a duty. In other words, a ·man, in defending himself, may not with impunity overstep the line of legitimate defence, and unnecessarily become an aggressor. And whether, in the language of Baron Parke, above quoted, "the occasion or exigency" has arisen which imposes a duty upon the defendant, is to be determined, not in accordance with what his honest notions of duty in the premises may have been, but upon all the surrounding circumstances. The occasion must be used *bona fide ;* but if the occasion be not privileged, the *bona fides* of the defendant's action will not make the communication privileged.

For the reasons, however, already stated, the judgment must be reversed, and the case remanded for a new trial. And the case will be remanded with the directions to the circuit court to give to the jury, upon any future trial of the case, the instructions which were asked for by the defendant (except the last one), as they appear in the transcript of the record, if they shall be again asked for, and the evidence is substantially the same.

JUDGMENT REVERSED.