# Richmond

THE GUIDE PUBLISHING COMPANY, INC. V.
BRUNETTA FUTRELL.

February 26, 1940.

Record No. 2151.

Present, All the Justices.

The opinion states the case.

*Thomas W. Young* and *J. Thomas Newsome,* for the plaintiff in error.

*Francis T. Wheeler* and *H. Clay Midgett,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action for insulting words, in which judgment for the plaintiff in the sum of $500 was entered on the verdict. To that judgment this writ of error was granted on the petition of the Guide Publishing Company, Inc., defendant in the trial court.

There is no merit in assignments of error numbered 1, 2 and 3. The fourth assignment of error is based on the refusal of the trial court to set aside the verdict on the ground that it was not supported by evidence. This contention renders it necessary to review the evidence in some detail.

Lenora White, a negro woman, while confined in jail in the city of Newport News, charged with a minor offense, was killed by another woman confined in the same cell. H. Clay Midgett, a negro lawyer, was retained as counsel by relatives of the deceased woman. This attorney determined to bring action against the city of Newport News for the wrongful death of decedent. He sought to invoke the jurisdiction of the federal court by inducing Brunetta Futrell, a negro citizen of North Carolina, to come from her home to Newport News, and there qualify as administratrix with him as joint administrator on the estate of Lenora White. Immediately after Midgett had instituted action in the federal court, he gave what he called a "release" to the Newport News reporter for the Journal and Guide, a weekly newspaper published in Norfolk, Virginia, by the Guide Publishing Company, a corporation owned and controlled by negroes. This so-called "release" was a lengthy typewritten document, stating the details of the death of Lenora White; the qualification on her estate of Brunetta Futrell, a non-resident; the history of the action against the city of Newport News pending in the federal court; and Midgett's connection and activities with these events.

This "release" did not state that Midgett was one of the personal representatives of the estate. The inference from the statements was that Brunetta Futrell was the only per-

son who qualified. The pertinent part of this narrative, as rewritten by the reporter, appeared in the Journal and Guide, published on November 13, 1938, in these words: "The City of Newport News was named defendant in a suit filed in United States District Court here last week in which the sum of $10,000 is sought for the death of a prisoner in the Newport News city jail. The action was brought by *Mrs*. Brunetta Futrell, *mother* and administratrix of the estate of Mrs. Lenora White, who died on September 14 last, allegedly as the result of injuries sustained while in a cell with Miss Lillian Furbush. * * * . Miss Furbush is awaiting action of the grand jury." (Italics supplied.)

After the case was dismissed by the federal district court, the same attorney, on November 2, 1938, gave the same reporter another "release." This, as rewritten, was published in the Journal and Guide in its December 11, 1938, issue in the following language:

"FEDERAL JUDGE REFUSES TO ACT IN $10,000 DAMAGE SUIT"

"JAIL SLAYING

HEADED FOR

APPEALS COURT"

---

"CASE DISMISSED HERE

FOR LACK OF

JURISDICTION"

---

"The jail cell slaying of Mrs. Lenora White in Newport News last September 14 appeared headed for the Fourth Circuit United States Court of Appeals this week.

"A suit against the City of Newport News and Lillian Furbush, accused slayer, filed early in October in the United States District Court here by *Mrs*. Brunetta Futrell *mother of the victim* and administratrix of her daughter's estate, in which damages totalling $10,000 are asked, was dismissed Wednesday by Judge Luther B. Way for lack of jurisdiction. (Italics supplied.)

"H. Clay Midgette, attorney for the plaintiff, announced that first papers have been filed taking an appeal to the United States Fourth Circuit of Appeals. S. R. Buxton, White, represented the defense.

"Action of Mrs. Futrell in filing suit in Federal Court here followed closely upon the heels of a notice of motion for damages filed against the City of Newport News City Council several days prior to the action.

"The case was carried to Federal Court because of a diversity of citizenship, the administratrix claiming residence in Northampton County, North Carolina.

"The plaintiff's contention was that no state statute, or rule of procedure can depend upon, or impair, the jurisdiction of a United States Court; otherwise the state law would be the Supreme Law of the land, instead of the Constitution of the United States, and Acts of Congress."

Brunetta Futrell was not known to the reporter until she called to see him in reference to the articles published in his paper. She asked him if he knew who was responsible for the news items, and he told her that he was. She then asked if he knew who was the mother of the girl who died in jail, and he replied that he had been informed that she was the mother. She told him that she had never been married, had no children, and asked him "if he would have it corrected." He replied that it was too late to get the correction published in the next issue of the paper, as it was published in Norfolk; but that, in due time, a correction and apology would be made and published. Then she said: "I told him it would be all right."

No correction appeared in the paper published on December 18, 1938. Defendant explains this by stating that the interview with plaintiff occurred too late for the correction to appear in that issue. It did appear in the next issue, published on December 25, 1938, and was couched in the following language: "It was erroneously reported, in two previous news stories in the Journal and Guide, on the suit brought by the estate of the late Mrs. Lenora White against the City of Newport News, that Miss Brunetta Futrell is the mother of Mrs. White. Miss Futrell who was in Newport News last week to consult with Attorney H. Clay Midgett, representing the White estate, (stated) that she is not the deceased's mother, nor is she a relative. The Journal and Guide carried the facts concerning Miss Futrell as given out in a release by the attorney in the case. It gladly makes this correction and expresses its regrets for any embarrassment the story might have caused her personally."

Plaintiff was not satisfied with this correction and apology. Thereafter, two other corrections were published in the same paper on January 8 and 22, 1939. The only objection plaintiff made to these corrections and apologies was that the articles did not state that the mother of the decedent was named Cora Johnson. Perhaps the explanation of the failure to name anyone as the mother of the victim in the publication was, as stated by counsel, that the paper had incorrectly published the name of one woman as mother upon information which it thought was trustworthy, and it did not care to run the risk of making another mistake by attempting to state the name of the mother.

These publications pertained to matters of public record, were interesting to the reading public, and, so far as they purported to state facts, were substantially correct. The articles did contain two misstatements of fact; one in their reference to plaintiff as a married woman, and the other in reference to her as the mother of the victim. These mistakes were duly and fully corrected and apologies extended to plaintiff in three subsequent issues of the paper. The

only fair, normal and common sense view of the publications is that they were made in good faith with no intention to insult plaintiff or to cast any reflection upon her. Plaintiff seemed to have so regarded the publications prior to and during her first interview with the reporter. Subsequently she changed her mind and brought this action.

The contention is that, under the provisions of Code, section 5781, a jury is the only tribunal clothed with power to determine whether the words are actionable, and that, since the jury in this case have returned a verdict for plaintiff, the court has no power to disturb it.

The statute originated in an act passed in 1810. This act was amended in 1830-31, and, as amended, read: "All words which, from their usual construction and common acceptation, are considered as insults, and lead to violence and breach of the peace, shall hereafter be actionable, and no plea, exception or demurrer, shall be sustained in any court within this Commonwealth, to preclude a jury from passing thereon, who are hereby declared to be the sole judges of the damages sustained: Provided that nothing herein contained shall be construed to deprive the several courts of the Commonwealth from granting new trials as heretofore."

It was held in *Moseley* v. *Moss*, 6 Gratt. (47 Va.) 534, that, under the provisions of this statute, proof of the truth of words uttered was not a bar to the action, but that the truth could be introduced in evidence and considered only in mitigation of damages.

Since the adoption of the Code Revisors' report in 1849, the statute has been and is as follows: "All words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon." 1849 Code, page 589, section 2.

The rule announced in *Moseley* v. *Moss, supra,* was changed by section 44, chapter 176, of the Code of 1849, the pertinent part of which reads: "In any action for defamation, the defendant may justify by alleging and proving that

the words spoken or written were true, and (after notice
* * * )" that he might offer in mitigation of damages an
apology to plaintiff for the defamation if it was made
before the commencement of the action or as soon there-
after as possible, etc.

In *Hogan* v. *Wilmoth,* 16 Gratt. (57 Va.) 80 (opinion
delivered in 1860), it was held: (1) That it was error to
combine in one count an action for defamation at common
law and an action for insulting words under the statute;
(2) that in order to maintain an action for insulting words
under the statute it was necessary to so state by appropriate
allegation in the declaration; and (3) that proof of truth
of the alleged defamatory words was a bar to the action.

Judge Lewis, in *Chaffin* v. *Lynch,* 84 Va. 884, 887, 6 S. E.
474, 476, said: "The language of Baron Parke in *Toogood*
v. *Spyring,* 1 C. & M. & R., 181, is equally strong. Refer-
ring to privileged communications, it was said by that
learned judge, that 'the occasion prevents the inference
of malice which the law draws from unauthorized com-
munications, and affords a qualified defence depending upon
the absence of actual malice. If fairly warranted by any
reasonable occasion or exigency, and honestly made, such
communications are protected for the common convenience
and welfare of society; and the law,' he added, 'has not
restricted the right to make them within any narrow limits.'

"The adjudged cases to the same effect are almost with-
out number, and they settle the law upon the subject be-
yond a doubt, not only as to libel or slander at common law,
but equally as to insults under the statute. For, as was
said when the case was first before us, the effect of the
statute, since it has been amended, is simply to make a
certain class of words actionable *per se,* which were not
so at common law, and as to which no demurrer shall pre-
clude the jury from passing thereon."

*Brown* v. *Norfolk & W. Ry. Co.,* 100 Va. 619, 42 S. E.
664, 60 L. R. A. 472, was an action for slander. Defence
was made on the ground of privileged communication, and
a demurrer to the evidence was sustained, notwithstanding

the declaration contained a count based on insulting words under the statute. However, Judge Keith, on page 624 of 100 Va., 42 S. E. at page 664, 60 L. R. A. 472, said that inasmuch as plaintiff had voluntarily joined in the demurrer, it was not necessary to decide whether he could have been compelled to do so under the provisions of section 2897 of the Code of 1887, now section 5781.

Judge Chinn, delivering the opinion of the court in *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 913, 141 S. E. 860, 863, said: "Looking at the Virginia cases involving actions under the statute in question, we find that all of them, since the statute was amended in 1849, have treated an action for insulting words entirely as an action for libel or slander, for words actionable *per se,* with two exceptions; 'no demurrer shall preclude a jury from passing thereon,' and no publication of the words is necessary. In all other respects an action under the statute is placed on all fours with an action for defamation at common law. The rules of evidence are the same, as are also questions in regard to privilege, and inferred malice and actual malice, and in regard to the character and measure of damages. The truth may also be plead under the statute (section 6240 of the Code) allowing this to be done 'in any action for defamation of character.' In fact the trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law *is* an action for libel or slander."

Judge Epes, speaking for the court in *Rosenberg* v. *Mason,* 157 Va. 215, 228, 160 S. E. 190, 195, said: "In considering the admissibility of this evidence we may dismiss from our minds the distinction that this is an action for insulting words under section 5781, Code of Va. 1919, and not an action for common law slander or libel. In Virginia both the truth and privilege are complete defenses in bar of any action for defamation, whether it be for common law slander or libel, or for insulting words; and the same rules of law with reference to the pleading and proof of these defenses apply in an action under section 5781 as in an action for

common-law slander or libel. Section 6240, Code 1919; *Chaffin* v. *Lynch,* 83 Va. 106, 1 S. E. 803, and *Id.,* 84 Va. 884, 6 S. E. 474; *W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860. See also, *Vaughan* v. *Lytton,* 126 Va. 671, 101 S. E. 865; *Rensch* v. *Roanoke Cold Storage Co.,* 91 Va. 534, 22 S. E. 358; *Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874, 156 S. E. 429." See *Chalkley* v. *Atlantic Coast Line R. Co.,* 150 Va. 301, 143 S. E. 631; *Federal Land Bank of Baltimore* v. *Birchfield* (June 12, 1939), 173 Va. 200, 3 S. E. (2d) 405.

Judge Harrison, in *Corr* v. *Lewis,* 94 Va. 24, 26, 26 S. E. 385, 386, said: "While the court would have the power to correct any manifest departure from right and justice on the part of the jury, still it must be conceded that the jury is regarded as the best and safest tribunal for determining the issues in such cases as the one before us. Hence the provision in the section quoted that no demurrer shall preclude a jury from passing on the case."

After referring to the *Brooks* v. *Calloway,* 12 Leigh (39 Va.) 466, and *Moseley* v. *Moss Cases,* Judge Harrison continues: "It is equally true that the literal meaning of words may import insult, and yet the manner of their utterance, and the circumstances under which they are said, would satisfy any one that no insult was intended."

Judge Buchanan, in *Boyd* v. *Boyd,* 116 Va. 326, 329, 82 S. E. 110, 111, Ann. Cas. 1916D, 1173, said: " * * * the statute giving a right of action for insulting words, when first enacted, * * * provided that 'No plea, exception or demurrer shall be sustained * * * to preclude a jury from passing thereon, who are hereby declared the sole judges of the damages sustained.' Act July 26, 1810; 4 Min. Inst. (1st Ed.) 383. While that provision in the statute has been changed so as to provide merely that 'No demurrer shall preclude a jury from passing thereon' (the insulting words), and the court has the power to correct any manifest departure from right and justice on the part of the jury, still the jury is regarded as the best and safest tribunal to determine not only the character of the alleged insulting words,

but also the measure of damages. *Corr* v. *Lewis,* 94 Va. 24, 26, 26 S. E. 385."

In *Weatherford* v. *Birchett,* 158 Va. 741, 748, 164 S. E. 535, 537, we said: "While the defendant's brief cites many cases from other jurisdictions dealing with the question, it cites none from this State in which a judgment under the statute was reversed because the verdict was excessive; not that the court is not clothed with the power to correct any manifest departure from right and justice on the part of the jury, but that in actions of this nature the jury is regarded as the best and safest tribunal to determine the measure of damage."

The foregoing authorities, notwithstanding the proviso in the statute to the effect that "no demurrer shall preclude a jury from passing thereon," establish the following principles: (1) That truth bars the action; (2) that privilege is a bar to the action unless plaintiff proves by a preponderance of the evidence an abuse of the privilege; and (3) that, while as a general rule the jury is regarded as the best and safest tribunal to determine whether the words are or are not actionable, the court has inherent power to set aside the verdict "in order to correct any manifest departure from right and justice."

The pertinent statements in the publications were not true, nor were they privileged. The remaining question is whether or not the verdict of the jury constitutes such a manifest departure from right and justice as to make it incumbent upon the court to exercise its inherent power over this verdict.

The exact words upon which this action is based are italicized in the following quotation from the publication: " * * * a suit * * * filed by *Mrs.* Brunetta Futrell, *mother* and administratrix of the estate of Lenora White."

Plaintiff contended throughout the trial that the words were insulting because, as she was a single woman, they conveyed the meaning stated in the innuendo, that "she was the mother of an illegitimate child, a fornicator and a liar." It is not the province of an innuendo to enlarge the

meaning of the alleged slanderous words. Its use is to explain matters already expressly alleged. "Mrs." is a title of courtesy prefixed to the name of a woman to indicate that she is married. "Mother" denotes a female parent. When used in reference to human beings, "mother" denotes the closest and highest relationship between persons.

"Maids must be wives and mothers to fulfil
"The entire and holiest end of woman's being."

The use of the courtesy title, as prefixed to the name Brunetta Futrell, indicated that Brunetta Futrell was a married woman. The subsequent reference to her in the same sentence as "mother" indicated the birth of a legitimate child born to her as the fruit of marriage. There is no suggestion nor intimation of fornication, nor of the birth of an illegitimate child, just as there is no suggestion, real or imaginary, that defendant intended to convey the idea that plaintiff was a liar. It is clear, then, that the usual construction and common acceptation of the words do not convey an insult, nor does such a construction of them "tend to violence and breach of the peace."

 There is nothing in the occasion, the circumstances nor the manner in which the words were used to indicate that they were used ironically. No witness stated that he so understood the language. Plaintiff herself did not claim, while testifying, that she put any such construction upon the language. She did state, in answer to a leading question, that she felt insulted, but she did not state just how the insult was conveyed. This statement was contrary to her former statement to the reporter in her first interview with him. The use of the courtesy title "Mrs.," in the absence of any evidence tending to show it was not used in good faith in reference to plaintiff, negatives any idea that defendant thought she was single. The context of the misstatement of facts carries no intimation that the author intended to convey the meaning that the woman alluded to was "the mother of an illegitimate child, a fornicator and a

liar." The allusions to plaintiff as "Mrs." and "mother," while erroneous, were made in good faith, and were followed by corrections and apologies, likewise made in good faith and within a reasonable time after defendant's attention had been called to the mistakes. A careful examination of the evidence, construed most favorably to plaintiff, fails to reveal any intention of the defendant to insult her or to cast any reflection upon her. The case was submitted to the jury on the theory that these mistaken allusions to plaintiff conveyed the idea that she was "the mother of an illegitimate child, a fornicator and a liar." There is not a scintilla of evidence to support such an interpretation of the language in question.

We have held that the statute declares a certain class of words actionable which were not actionable at common law. We have said repeatedly that the jury is regarded as the best and safest tribunal for determining the character of the alleged insulting words as well as the measure of damages. This is the general rule and should be adhered to unless the record clearly shows that the jury has been misled. Several former distinguished members of this court, in stating and applying the rule, were careful to say that the rule did not prohibit this court from exercising its inherent power over verdicts returned in this class of action where it was evident that the jury had departed from right and justice. The conceded facts bring this case squarely within this doctrine. The jury was evidently misled by an improper innuendo and the argument of counsel on a theory which has no foundation in fact or reason.

 The foregoing discussion is intentionally confined to the case made in the trial court. In this court counsel contended that the publications were insulting because they referred to plaintiff as the mother of a woman who died in jail. This theory is made the basis for the dissenting opinion; however, this theory was not properly presented in the pleadings and apparently was advanced in this court for the first time. This court only reviews a case presented in the trial court, not a new case made here. However, if

the insult was so slight that plaintiff did not know upon what ground to base her action until nearly eighteen months from the date of the publication, and then only in the argument in the appellate court, the reflection or insult is too trivial to be seriously considered by this court.

A careful consideration of the evidence convinces us that it is the duty of this court to exercise its inherent power over this verdict by setting it aside, and reversing the judgment of the trial court. It will be so ordered.

*Reversed and final judgment.*

CAMPBELL, C. J., and HOLT, and GREGORY, JJ., dissenting.

HOLT, J., dissenting.

Mrs. Lenora White was killed by a cellmate in a jail in Newport News.

The plaintiff is seeking to recover damages suffered by reason of this news article, which appeared in defendant's weekly paper under date of November 13, 1937:

"The City of Newport News was named defendant in a suit filed in United States District Court here last week in which the sum of $10,000 is sought for the death of a prisoner in the Newport News city jail. The action was brought by Mrs. Brunetta Futrell, mother and administratrix of the estate of Mrs. Lenora White, who died on September 14 last, allegedly as the result of injuries sustained while in a cell with Miss Lillian Furbush. * * * . Miss Furbush is awaiting action of the grand jury."

Rewritten it again appeared in the issue of December 11, 1937. Brunetta Futrell, who was unmarried and who had had no child, felt herself aggrieved and protested. Thereupon the defendant, in its issues of December 25, 1937, January 8, 1938, and January 22, 1938, corrected its erroneous statements and apologized.

In the majority opinion it is said that "the pertinent statements in the publication were not true and were not privileged." In this I concur.

Plaintiff has recovered a verdict and judgment for $500. We have to determine if it is sustained by the evidence.

By way of defense it is said that the facts stated were published in good faith and were obtained from a source thought to be reliable; indeed, from the plaintiff's counsel, H. Clay Midgett, and were written into a "release" given by him to S. A. Haynes, a reporter regularly employed.

There is in the record a release of November 3, 1937; it states that an action had been brought in the United States District Court for the Eastern District of Virginia by the administratrix of Lenora White against the city of Newport News, and that the administratrix was Miss Brunetta Futrell. This action was set down for hearing on November 22, 1937. It was dismissed for want of jurisdiction. On the same day another release was given by plaintiff's counsel to this reporter, and thereupon the article of December 11, 1937, heretofore noted, was published. The first release bears date November 3, 1937; the first erroneous publication is of date November 13th. Since defendant's paper is published once a week and is issued ahead of the date which it bears, the probabilities are that this publication was based upon that release. It is perfectly clear that in it there is no statement to the effect that Lenora White was the daughter of Mrs. Brunetta Futrell; on the contrary, it is definitely stated that the action in the Federal Court was instituted by Miss Brunetta Futrell, so that if any statement containing the errors complained of was contained from any release, it must have been in the release of November 22, 1937. That release is not in the record and has been either lost or destroyed.

Let us, for the sake of argument, concede that it did there appear. It is perfectly plain that the errors in the first publication can not be wiped away by information received, no matter from what source. The misinformation contained in the first report must be charged against the reporter and not against Midgett. The publication of November 22nd but continued the errors in that of November 13th.

Code, section 5781, declares that words which, from their usual construction and common acceptation, are construed as insults and tend to violence and breach of the peace, are actionable. Under Code, section 6240, the defendant may show, in mitigation of damages, that error had been corrected and an apology made. It may do this in mitigation of damages but not in complete satisfaction. *James* v. *Powell*, 154 Va. 96, 152 S. E. 539. The right of action remains, notwithstanding the apologies.

I can conceive of nothing better calculated to give trouble than an erroneous statement to the effect that an unmarried woman of good character had a daughter, therefore illegitimate, who died in jail. Indeed, a false statement to the effect that the daughter of a married woman died there would also probably give trouble. That the offense committed in the first publication was committed with knowledge of the facts at hand is, as we have seen, shown by the first release which describes Brunetta and Miss Brunetta.

I have no quarrel with cases which hold that a trial judge may in a perfectly plain case set aside a recovery had under the statute of insulting words; but that statute, in declaring that a demurrer will not lie to a declaration in such case, emphasizes the importance of the jury's verdict. Here we have an unwarranted and humiliating published statement.

Plaintiff's damages are augmented by constant inquiries concerning this dead daughter, and a surprised sister wrote to her from North Carolina, asking, "What about your daughter killed in jail?", all of which was naturally mortifying.

Newspapers have all the rights which individuals have and may publish with impunity any statement which an individual might, with safety, make, but not more. In this case the offense is aggravated by the fact that this newspaper not only made no effort to find out what the facts were, as first stated, but it was put on notice as to what they were by written information then in hand. It was not actually malicious, but it was careless.

There are no errors relied upon in instructions given. The judgment is being set aside, not because it is excessive, but because the plaintiff is without redress. In this I can not concur.

GREGORY, J., concurs in this dissent.