**James D. O'NEIL, an infant who sues by James S. O'Neil, his father and next friend, Plaintiff,**

**v.**

**Alfred B. G. EDMONDS and John W. Edmonds, Jr., t/a Owners and Publishers of the Peninsula Enterprise, Accomac Court House, Virginia, Defendants.**

**Civ. A. No. 2449.**

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 3, 1958.

Worthington, White & Harper, Norfolk, Va., C. A. Turner, Jr., Eastville, Va., John P. Harper, Norfolk, Va., and C. A. Turner, Jr., Eastville, Va., for plaintiff.

Meade T. Spicer, Jr., Richmond, Va., B. T. Gunter, Jr., Accomac, Va., Henry J. Lankford, Norfolk, Va., John W. Edmonds, III, Richmond, Va., for defendants.

**WALTER E. HOFFMAN,** District Judge.

The issue for consideration on defendants' motion for summary judgment is whether the publication of a false report of a person's death is sufficient to form the basis of an action for libel, and whether the same is actionable under and by virtue of the provisions of § 8–630, Code of Virginia, 1950; said latter section providing for a cause of action under the Virginia statute of insulting words relating to "all words which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace".

The plaintiff is a citizen of the State of New York and, at the time of the facts hereinafter related, was a member of the United States Navy assigned to the U. S. S. Darby. The defendants are citizens of the State of Virginia and are owners and publishers of a weekly newspaper operating under the name of "Peninsula Enterprise", whose news coverage and primary circulation is throughout the Eastern Shore of Virginia. In its weekly edition distributed to the public on or about May 31, 1956, a news article reported the following:

> "*Sailor dead as result of crash at Kiptopeke.*
>
> \*   \*   \*   \*   \*   \*
>
> "*Shore couple in other car were on jaunt following high school dance.*
>
> "A young sailor, James O'Neil, of the U. S. S. Darby, died in Portsmouth Naval Hospital Monday, the aftermath of a two-car crash on Kiptopeke Ferry Terminal property just after midnight last Friday night."

The balance of the news story related certain details with respect to the accident which are not pertinent for consideration in the instant litigation. It is sufficient to state that the article in question placed no responsibility for the accident upon the plaintiff herein, or any of the occupants of the car in which plaintiff was riding as a passenger. The basis of plaintiff's claim is that he was reported as dead when, in fact, he was only seriously injured.

It is conceded by counsel that defendants acted without malice and knowledge of the falsity of the report as published. There may be unusual circumstances in which the publication of a false report of a person's death is sufficient to give rise to an action for libel. For example, if the circulated report states that a person has been found dead under disgraceful circumstances, the libelous imputation goes further than the mere publication of a false report of death. The right of action has been upheld with respect to the publication in a newspaper of the obituary notice of a woman whose age was greatly exaggerated, where the newspaper editor had conceived and published the notice with a malicious intent and with knowledge of its falsity. McBride v. Ellis, 9 Rich. 313, a South Carolina case decided in 1856.

■ Absent special circumstances which do not exist in the instant case, the weight of authority leans to the view that the publication of a false report of death is not libelous *per se*, and that it is not defamatory to say that a man is dead. 53 C.J.S. Libel and Slander § 18; Prosser, Handbook of the Law of Tort, p. 574, 1955 Ed.; Lemmer v. The Tribune, Inc., 50 Mont. 559, 148 P. 338; Cardiff v. Brooklyn Eagle, Inc., 190 Misc. 730, 75 N.Y.S.2d 222; Ross v. MacFadden Publications, Inc., 174 Misc. 1019, 22 N.Y.S.2d 519; Estill v. Hearst Publishing Co., Inc., 7 Cir., 186 F.2d 1017.

Actually the information with respect to the death of plaintiff was obtained by defendants through the statement of a Virginia State Trooper who had apparently been misinformed with respect to plaintiff's true condition. Defendants had no personal acquaintance with plaintiff and there existed no cause for the publication of an erroneous report of his death. Simply stated, it was one of those errors which will occur in the publication of a newspaper, but this is not to say that all erroneous reports give rise to an action for libel or under the Virginia statute of insulting words.

■■ As was said in Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 82 S.E.2d 588, an action for insulting words under § 8–630, Code of Virginia, 1950, is treated precisely as an action for slander or libel, for words actionable *per se*, with one exception, namely, no publication is necessary. It appears that the trial of an action for insulting words is completely assimilated to the common law action for libel or slander, and from the standpoint of the Virginia law, it is an action for libel or slander. Darnell v. Davis, 190 Va. 701, 58 S.E.2d 68; W. T. Grant Co. v. Owens, 149 Va. 906, 141 S.E. 860; Guide Pub. Co. v. Futrell, 175 Va. 77, 7 S.E.2d 133. For the purpose of the present proceeding it does not appear that there is any valid distinction between the action for libel under the first cause of action and the action for insulting words under the second cause of action.

■ Manifestly, the alleged defamatory words are not actionable *per se* as (1) they do not impute to the plaintiff the commission of a criminal offense involving moral turpitude, (2) they do not impute to the plaintiff any suggestion that he is infected with a contagious disease which, if true, would exclude him from society, (3) they do not prejudice the plaintiff in his profession or trade, and (4) it can hardly be said that they impute to the plaintiff any unfitness to perform the duties of an office or employment of profit, or one of integrity in the discharge of such an office or employment. As to all other defamatory words not in themselves actionable *per se*, it is necessary for the plaintiff to show special damage. While ordinarily the gravamen of the action is the insult to the feelings of the offended party, and not the intention of the party using the words, the nature of the words used must from their usual construction and common acceptation be construed as insults and tend to violence and breach of the peace. The meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. Plaintiff has not alleged any special damage in his complaint which would suggest that the erroneous publication of notice of his death had adversely affected the duties of his office or employment of profit, or otherwise prejudiced him in his profession or trade. In holding that the publication of the false report of a person's death is not actionable when unaccompanied by special circumstances, it is the duty of the Court to sustain the defendants' motion for summary judgment and dismiss the action.

The foregoing makes it unnecessary to discuss the questions of privilege and jurisdictional amount as raised by said defendants in other grounds asserted in the motion for summary judgment. Neither point is free from doubt but an extended discussion of these issues would merely prolong this memorandum.

Counsel for the defendants will prepare an order in accordance with this

memorandum, which is adopted by the Court in lieu of specific findings of facts and conclusions of law and, after presentation to counsel for the plaintiff for inspection and endorsement, the same shall be forwarded to the Court for entry.